**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **PARAMOUNT TAX & ACCOUNTING CPAS, PLLC, PLAINTIFF** | ) | **CIVIL ACTION NO.: 1:24-CV-1014** |
| **-versus-** | ) | |
| **PARAMOUNT TAX AND ACCOUNTING, LLC, DEFENDANT.** | ) | |

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**COMES NOW** the defendant in the above styled action, **Paramount Tax and Accounting, LLC**, by and through its undersigned attorney, who sets forth its Response to Plaintiff's Motions for Partial Summary Judgment on the Issues of Trademark Infringement-Actual Confusion and Prior Use, by stating and showing as follows:

## I.
## DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS

### A.
### ***DEFENSE OF PRIOR COMMON LAW USE*** (Doc. 48)

Pursuant to F.R.Civ. P. 56 and L.R. 56.1(B)(2), the defendant sets forth its response to the plaintiff's statement of facts regarding the defendant's prior use

defense (Doc.48), by responding to each of plaintiffs' statements copied below, in the order of their enumeration.

**Plaintiff's Enumerated Statements**

***1. Plaintiff Paramount Tax & Accounting CPAs, PC ("Paramount PC") is a professional corporation organized under the laws of Utah, formed on December 9, 2008. See Ex. 1, Articles of Incorporation for Paramount Tax and Accounting CPAs, PC.***

**Response:** Admitted.

***2. From 2008 through 2015, Paramount PC expanded its tax and accounting business operations in Salt Lake County, Utah, continuously using the PARAMOUNT mark in commerce in connection with tax preparation and accounting services. See Ex. 3, Excerpt from Paramount Franchising LLC's Franchise Disclosure Document (FDD)1, at p. 1; Ex. 4, Certificate of Registration for United States Trademark Registration No. 4,941,080; and Ex. 5, Official USPTO Notice of Acceptance/Acknowledgement Sections 8 and 15.***

**Response**: The document referenced as plaintiffs' "*Ex. 3, Excerpt from Paramount Franchising LLC's Franchise Disclosure Document (FDD)1, at p. 1"* is undated, unsigned, and fails to state, support or establish any of the facts alleged at paragraph 2. The document identified by plaintiff as "*Ex. 4, Certificate of Registration for United States Trademark Registration No. 4,941,080"* is dated 04/19/2016 and names Frank Lattuca as "*EXAMINING ATTORNEY*." The document refers to the "*first use*" of the "*PARAMOUNT*" mark in commerce on "*12-9-2008*." The document fails to state, support or establish that the plaintiff was "*continuously using the PARAMOUNT mark in commerce in connection with tax preparation and accounting services*" between 2008 and 2015. The document

referenced as "*Ex. 5, Official USPTO Notice of Acceptance/Acknowledgement Sections 8 and 15"* refer to a "*declaration of use*" and a "*declaration of incontestability,*" but no such declarations are included as part of Exhibit 5. Further, Exhibit 5 makes no reference to plaintiff's continuous use of any marks in commerce from 2008 to 2015.

***3. Plaintiff Paramount Tax & Accounting CPAs, PLLC ("Paramount PLLC") is a professional limited liability company organized under the laws of Nevada, formed on July 7, 2022, and serves as the operating parent of Paramount Franchising LLC. See Ex. 2, Corporate Records for Paramount Tax & Accounting CPAs, PLLC.***

**Response:** The document attached as "*Ex. 2, Corporate Records for Paramount Tax & Accounting CPAs, PLLC"* fails to state, support or establish that the "Paramount PLLC" entity "*serves as the operating parent of Paramount Franchising LLC.*"

***4. As of the date of this filing, Paramount operates over 91 franchise and affiliated locations across the United States. See Ex. 3, Excerpt from Paramount Franchising LLC's Franchise Disclosure Document (FDD), at p. 48.***

**Response:** This statement is denied as it varies from the plaintiff's Statement of Fact No. 8 in (Doc. 51), which states that, "*As of 2025, Paramount operated 93 franchise and affiliated locations across the United States. See Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 20, pp. 44.*"

***5. Paramount PC owns U.S. Trademark Registration No. 4,941,080 (the '080 Registration) for the word mark PARAMOUNT in connection with tax***

***preparation and accounting services, issued April 19, 2016, from an application filed September 7, 2015, claiming first use in commerce of December 9, 2008. See Ex. 4, Certificate of Registration for United States Trademark Registration No. 4,941,080.***

**Response:** Admitted that Exhibit 4 is a true copy of the Certificate of Registration for United States Trademark Registration No. 4,941,080.

***6. On January 24, 2022, the '080 Registration achieved incontestable status under 15 U.S.C. § 1065, when the USPTO accepted and acknowledged a combined Section 8 and Section 15 declaration. See Ex. 5, Official USPTO Notice of Acceptance/Acknowledgement Sections 8 and 15.***

**Response:** Admitted.

***7. The '080 Registration is currently live and active on the Principal Register. See Ex. 5, Official USPTO Notice of Acceptance/Acknowledgement Sections 8 and 15.***

**Response:** Admitted.

***8. In its Answer, Defendant asserted prior common law use as a defense under 15 U.S.C. § 1115(b)(5), alleging prior and continuous common law use of the PARAMOUNT name since October 2008. See Declaration of Kenneth Thomas Emanuelson in Support of Plaintiffs' Motion for Partial Summary Judgment on Defendant's Prior Use Defense (hereafter, "Emanuelson Decl."), ¶ 24.***

**Response:** Admitted.

***9. On October 28, 2008, a certificate of organization was filed with the Georgia Secretary of State to form Paramount Tax and Accounting, LLC. See Ex.6, Certificate of Organization for Paramount Tax and Accounting, LLC.***

**Response:** Admitted.

***10. On November 7, 2008, Defendant registered the domain name "paramounttax.com." See Ex.7, WHOIS Record for PARAMOUNTTAX.COM.***

**Response:** Admitted.

***11. Defendant did not produce documentation or tangible evidence as to the use of the Defendant's domain name in connection with the actual rendering of tax and accounting services before Plaintiffs' priority date in its initial responses to Plaintiffs' Discovery Requests. See Ex. 8, Letter to Defendant's Counsel dated September 17, 2025; Ex. 9, Letter to Defendant's Counsel dated September 29, 2025; Ex. 10, Letter to Defendant's Counsel dated October 15, 2025; and Ex. 12, Defendant's Supplemental Production Dated March 12, 2026.***

**Response:** The defendant objects to this statement as a legal conclusion and denies the statement, which is refuted by the information contained in those documents provided by the defendant.

***12. Plaintiffs sent numerous letters to Defendant's counsel in regard to its discovery responses. See Ex. 8, Letter to Defendant's Counsel dated September 17, 2025; Ex. 9, Letter to Defendant's Counsel dated September 29, 2025; Ex. 10, Letter to Defendant's Counsel dated October 15, 2025; and Ex. 12, Defendant's Supplemental Production Dated March 12, 2026.***

**Response:** The defendant admits that the plaintiff sent the letters identified in this statement.

***13. During the course of discovery in this case, Plaintiffs served multiple rounds of written discovery requests directed in part to the evidentiary basis of Defendant's asserted prior use defense, including interrogatories and requests for production seeking client records, financial records, geographic evidence of business operations, and advertising materials. See Ex. 8, Letter to Defendant's Counsel dated September 17, 2025; Ex. 9, Letter to Defendant's Counsel dated September 29, 2025; and Ex. 10, Letter to Defendant's Counsel dated October 15, 2025.***

**Response:** The defendant admits that the discovery requests referenced as Exhibits 9 and 10 were served by Plaintiff. The plaintiff's reasoning, strategy, or intended purpose of the requests are outside the defendant's knowledge.

***14. On May 22, 2025, Plaintiffs served on Defendant their First Set of Requests for Production (Requests 1-13) and First Set of Interrogatories (Interrogatories 1-12). See Ex. 8, Letter to Defendant's Counsel dated September 17, 2025.***

**Response:** Admitted.

***15. Plaintiffs' First RFPs and Interrogatories were directed at business addresses used by Defendant, the quantity and geographic locations of Defendant's customers, and advertising used by Defendant during relevant time frames. See Ex. 8, Letter to Defendant's Counsel dated September 17, 2025.***

**Response:** The discovery requests speak for themselves.

***16. On June 27, 2025, Defendant served initial responses to Plaintiffs' First RFPs and First Interrogatories. See Ex. 8, Letter to Defendant's Counsel dated September 17, 2025.***

**Response:** Admitted.

***17. In response to Plaintiffs' 13 separate Requests for Production, Defendant initially produced 22 pages of documents — all publicly available documents printed from government websites. See Ex. 8, Letter to Defendant's Counsel dated September 17, 2025.***

**Response:** Admitted.

***18. On September 17, 2025, Plaintiffs' counsel wrote to Defendant summarizing the many issues with Defendant's responses to discovery and requesting a formal meet and confer. See Ex. 8, Letter to Defendant's Counsel dated September 17, 2025.***

**Response:** Admitted.

***19. On September 24, 2025, Defendant produced to Plaintiffs a set of Supplemental Responses to Plaintiffs' First Requests for Production. See Ex. 9, Letter to Defendant's Counsel dated September 29, 2025.***

**Response:** Admitted.

***20. On September 29, 2025, Plaintiffs' counsel wrote again to Defendant identifying the many inconsistencies with Defendant's responses to discovery and requesting a meet and confer on the issues. See Ex. 9, Letter to Defendant's Counsel dated September 29, 2025.***

**Response:** The defendant admits that the defendant sent the letter attached as Exhibit 9. The defendant disputes the characterization of its responses as containing "*many inconsistencies*."

***21. Later that day, Defendant produced to Plaintiffs a set of Supplemental Responses to Plaintiffs' Interrogatories. See Ex. 10, Letter to Defendant's Counsel dated October 15, 2025.***

**Response:** Admitted.

***22. On October 15, 2025, counsel for Plaintiffs wrote to counsel for Defendant identifying the numerous remaining inconsistencies and deficiencies in Defendant's prior discovery responses and insisting that the same be corrected by Defendant in an expeditious manner. See Ex. 10, Letter to Defendant's Counsel dated October 15, 2025.***

**Response:** The defendant admits that the defendant sent the letter attached as Exhibit 10. The defendant disputes the characterization of its response as containing "*numerous remaining inconsistencies*."

***23. On October 17, 2025, Plaintiffs served on Defendant their Second Set of Interrogatories, Second Set of Requests for Production, and First Set of Requests for Admission. See Ex. 13, Plaintiffs' Summary per Section G(3) of Standing Order.***

**Response:** Admitted.

***24. The Second Interrogatories, Second RFPs, and First RFAs were directed in large part to the business addresses used by Defendant, the client base of Defendant, and the manner of usage of the accused infringing mark by***

***Defendant. See Ex. 12, Defendant's Supplemental Production Dated March 12, 2026.***

**Response:** The defendant admits that the discovery requests referenced as Exhibit 12 were served by Plaintiff. The plaintiff's reasoning, strategy, or intended purpose of the requests are outside the defendant's knowledge.

***25. On November 3, 2025, Plaintiffs deposed Christopher Hardy, owner and principal of Defendant Paramount Tax and Accounting, LLC, in his individual capacity. See Ex. 15, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 117:8–117:12.***

**Response:** Admitted.

***26. On November 14, 2025, Plaintiffs took the Rule 30(b)(6) deposition of Defendant Paramount Tax and Accounting, LLC, with Christopher Hardy appearing as the corporate representative. See Emanuelson Decl., ¶ 37.***

**Response:** Admitted.

***27. On November 16, 2025, Defendant served its responses to Plaintiffs' Second Interrogatories, Second RFPs, and First Requests for Admission. See Emanuelson Decl., ¶ 25.***

**Response:** Admitted.

***28. The sum total of documents produced by Defendant in response to Plaintiffs' Second Set of Requests for Production (Requests 14-55) was 41 pages. See Emanuelson Decl., ¶ 26.***

**Response:** Admitted.

***29. After multiple attempts to secure documentation from Defendant, Plaintiffs requested the assistance of the Court via a request for a discovery conference and submitted a summary, per Section G(3) of this Court's Standing Order, summarizing the pending issues. See Ex. 13, Plaintiffs' Summary per Section G(3) of Standing Order.***

**Response:** Admitted.

***30. The Court held a discovery conference and subsequently entered a directive for Defendant to produce all responsive materials and certify completeness of that production. See Ex. 11, Minute Sheet for proceedings held In Chambers on March 2, 2026.***

**Response:** The defendant admits that Exhibit 11 is an accurate copy of the Court's directive.

***31. At the November 3, 2025, deposition, Chris Hardy admitted Defendant has no documents establishing the location of Defendant's client base as of September 2015: "Q. Okay. And to confirm, your testimony is that Defendant has no documents in its possession that would reveal the addresses of its client base as of September of 2015? A. No. I do not have that." See Ex. 15, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 117:8–117:12.***

**Response:** The defendant's testimony was accurately recorded and transcribed, and speaks for itself.

***32. Hardy admitted that Defendant has no financial documentation for 2015: "Q. About the same? And do you have any documentation relating to your financials in 2015? A. I don't." See Ex. 16, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 115:20–115:22.***

**Response:** The defendant's testimony was accurately recorded and transcribed, and speaks for itself.

***33. Hardy admitted Defendant could not reconstruct 2015 financial records: "A. It's not available. I would have to, like, go recreate something and I didn't recreate anything for this. I just don't — I don't have that information." See Ex. 16, Excerpt of Transcript November 3, 2025, Deposition of Chris Hardy at 116:8–116:10.***

**Response:** The defendant's testimony was accurately recorded and transcribed, and speaks for itself.

***34. Hardy admitted that Defendant retains tax returns for only three years, leaving the 2015 return unavailable: "A. I believe I keep them for three years." See Ex. 16, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 116:12.***

**Response:** The defendant's testimony speaks for itself.

***35. Hardy testified under oath that Defendant has never advertised and relies solely on word-of-mouth referrals: "Q. And the answer there is that Paramount has not advertised its services and relies on word-of-mouth referrals. Was that a correct and full answer to that question? — A. Absolutely, it is." See Ex. 17, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 85:10–85:14.***

**Response:** The defendant's testimony speaks for itself.

***36. Hardy testified that the Defendant's website has not been updated since 2015: "A. But as you can see, the Paramount Tax hasn't been — updated the front page since 2015." See Ex. 17, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 84:18–84:19.***

**Response:** The defendant's testimony speaks for itself.

***37. Hardy testified that client files are actively deleted on a rolling three year basis as a deliberate practice: "A. And after three years, it's just completely gone. We don't have the records. We don't store them. We don't keep copies of returns or anything. It is a due diligence process that we go through of getting rid of those files." When asked whether this was an active practice, Hardy confirmed: "A. On a rolling basis, yes." See Ex. 18, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 121:15–121:19; 121:21.***

**Response:** The defendant's testimony speaks for itself.

***38. Hardy admitted that Defendant's email system only goes back to approximately 2013-2014, and no relevant data was found in the archive: "A. The e-mail, I'm not sure exactly when we started Google. 2013/'14-ish … Couldn't find — could not find any data regarding that." See Ex. 19, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 122:17–123:2.***

**Response:** The defendant's testimony speaks for itself.

***39. When asked whether the claim to prior use was based entirely on personal recollection, Hardy responded: "A. I mean, there's the registration with the Secretary of State from 2008 that shows that I was operating a business in the state of Georgia." See Ex. 20, Excerpt of Transcript of November 3, 2025, Deposition of Chris Hardy at 123:8-123:10.***

**Response:** The defendant's testimony speaks for itself.

***40. On March 12, 2026, Defendant produced 910 pages of materials. See Emanuelson Decl. ¶ 27.***

**Response:** Admitted.

***41. Defendant provided a sworn verification dated March 12, 2026, attesting: "Based on my diligent search, as described in the written discovery responses provided to the plaintiff, the defendant has separately and fully answered the plaintiffs' interrogatories and requests for production of documents by providing all known responsive information and documents in its possession, custody, or control, and by communicating with, and requesting information and documents from those third-party sources identified in the defendant's written responses." See Ex. 12, Defendant's Supplemental Response dated March 12, 2026, at pp. 12-13.***

**Response:** Admitted.

***42. In the supplemental discovery response dated March 12, 2026, Defendant confirmed it searched email accounts, Google Drive, Dropbox, Xero, Drake, garage storage boxes, external electronic storage devices, and contacted his bank, the IRS, and a former co-tenant — and found no responsive documentation for the relevant periods. See Ex. 12, Defendant's Supplemental Response dated March 12, 2026, at p. 2.***

**Response:** The defendant admits only that his statements are accurately shown in plaintiff's Ex. 12, *Defendant's Supplemental Response dated March 12, 2026, at p. 2.*

***43. Defendant's production of March 12, 2026, does not provide any documentation to show commercial use by Defendant between the years 2012 and 2015. See Emanuelson Decl., ¶ 14.***

**Response:** This statement is denied as being argumentative and containing the opinion or conclusion of the plaintiffs' attorney. Further, commercial use of the paramount name and URL is established by the defendant's deposition testimony and other exhibits to the defendant's response, as discussed in the Declaration of William R. Carlisle.

***44. Defendant stated in its supplemental discovery responses that locations of past clients were "substantially similar in geographic scope" to surrounding years. See Ex. 12, Defendant's Supplemental Production dated March 12, 2026, at 2.***

**Response:** Admitted.

***45. Defendant confirmed it is unable to locate financial information responsive to Interrogatories 17 and 18 for the years 2015, 2016, and 2017. See Ex. 12, Defendant's Supplemental Response dated March 12, 2026, at pp. 2–3.***

**Response:** Admitted that the defendant confirmed it was unable to locate any financial information responsive to Interrogatories 17 and 18 for the years 2015, 2016, and 2017 beyond the documents that had already been provided to the plaintiffs.

***46. Bates numbers 36-179 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as an undated list of street addresses. See Emanuelson Decl., ¶ 28.***

**Response:** Denied. The documents reflect the location of the defendant's clients, by street address, city, state, and zip code. See Declaration of William R. Carlisle, at paragraphs 3-21.

***47. Bates numbers 479-480 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as copies of business cards. See Emanuelson Decl., ¶ 29.***

**Response:** Admitted.

***48. Bates number 462 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as a promotional flyer dated January 4, 2008. See Emanuelson Decl., ¶ 30.***

**Response:** Denied. The defendant produced a 2008 promotional flyer used by the defendant for targeted direct mailing campaign. See Declaration of William R. Carlisle, at paragraphs 3-21.

***49. Bates number 497 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as discount coupons dated 2008. See Emanuelson Decl., ¶ 31.***

**Response:** Denied. The defendant provided discount coupons dated 2008 that were distributed by the defendant as part of a targeted direct mailing campaign. See Declaration of William R. Carlisle, at paragraphs 3-21.

***50. Bates numbers 484-494 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as promotional letters dated December 22, 2008. See Emanuelson Decl., ¶ 32.***

**Response:** Admitted that the letters are promotional letters created by the defendant for distribution to potential clients in December 2008 and January 2009. See Declaration of William R. Carlisle, at paragraphs 3-21.

***51. Bates numbers 481-483 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as a promotional letter dated January 6, 2009. See Emanuelson Decl., ¶ 33.***

**Response:** Admitted that the document is a promotional letter created by the defendant for distribution to potential clients in January 2009. See Declaration of William R. Carlisle, at paragraphs 3-21.

***52. Bates numbers 495-496 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as email messages dated January 8, 2009. See Emanuelson Decl., ¶ 34.***

**Response:** Admitted that the documents are email messages between Bevery Randolph, an employee of the defendant, and the YMCA, regarding a potential non-profit partnership offer. See Declaration of William R. Carlisle, at paragraphs 3-21.

***53. Bates numbers 498-499 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as a magazine cover and cover letter dated January 2009. See Emanuelson Decl., ¶ 35.***

**Response:** Admitted that the magazine cover features Chris Hardy, the defendant's principal officer and owner. See Declaration of William R. Carlisle, at paragraphs 3-21.

***54. Bates number 461 produced by Defendant on March 12, 2026, comprised documents that can be reasonably characterized as a postcard dated 2012. See Emanuelson Decl., ¶ 36.***

**Response:** Admitted that the document was a pre-sort postcard "rider" distributed by the USPS, expiring on 02/15/2012. See Declaration of William R. Carlisle, at paragraphs 3-21.

**B.**
***TRADEMARK INFRINGEMENT-ACTUAL CONFUSION* (Doc. 51)**

Pursuant to F.R.Civ. P. 56 and L.R. 56.1(B)(2), the defendant sets forth its response to the plaintiff's statement of facts offered in support of the plaintiffs' motion for partial summary judgment on its claim of trademark infringement and "Actual Confusion" (Doc. 51), by responding to each of plaintiffs' statements copied below, in the order of their enumeration.

**Plaintiff's Enumerated Facts-Trademark Infringement (Doc. 51)**

***1. Plaintiff Paramount Tax & Accounting CPAs, PC ("Paramount PC") is a professional corporation organized under the laws of Utah, formed on December 9, 2008, and has continuously operated since that time. See Ex. 1, Articles of Incorporation of Paramount Tax & Accounting CPAs, PC, p.1.***

**Response:** Admitted that Exhibit 1 includes a copy of the Articles of Organization for Paramount, PC. The defendant has no knowledge of whether the plaintiff, Paramount, P.C., has been in business continuously since its formation and no evidence has been produced in support of this statement.

***2. Plaintiff Paramount Tax & Accounting CPAs, PLLC ("Paramount PLLC") is a professional limited liability company organized under the laws of Nevada,***

***formed on July 7, 2022. See Ex. 2, Corporate Records for Paramount Tax & Accounting CPAs, PLLC, p.1.***

**Response:** Admitted that Exhibit 2 includes a copy of the Articles of Organization for Paramount, PLLC.

***3. Paramount PC is the owner of a portfolio of federal trademark registrations including U.S. Trademark Registration No. 4,941,080 (the "'080 Registration") for the word mark "PARAMOUNT" in connection with tax preparation and accounting services (the "Paramount Mark"), issued April 19, 2016, from an application filed September 7, 2015. See Ex. 4, Certificate of Registration for United States Trademark Registration No. 4,941,080, p.1.***

**Response:** Admitted that Exhibit 4 is a true copy of the Certificate of Registration for United States Trademark Registration No. 4,941,080.

***4. On January 24, 2022, the '080 Registration achieved "incontestable" status under 15 U.S.C. § 1065 upon the receipt and acknowledgement of the Registrant's Renewal under Sections 8 and 15 of the Lanham Act. See Ex. 5, Official USPTO Notice of Acceptance/Acknowledgement Under Sections 8 and 15, p. 1.***

**Response:** Admitted.

5. Paramount PLLC is the operating parent of Paramount Franchising LLC, a Utah-based limited liability company and the franchise system entity. See Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 1, page 1.

**Response**: The defendant has no knowledge of the truth of this statement but admits that this statement is contained in plaintiff's Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 1, page 1.

***6. Under an intercompany license agreement entered in 2018, Paramount Franchising LLC holds the exclusive right from Paramount PC to sublicense the registered marks to franchisees throughout the United States. See Ex. 3, Excerpt***

***from Franchise Disclosure Document for Paramount Franchising LLC, Item 13, pp. 29-31.***

**Response**: The defendant has no knowledge of the truth of this statement but admits that this statement is contained in plaintiff's Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 1, pages 29-31.

***7. Each franchisee operates a Paramount Tax & Accounting office under Paramount's marks pursuant to a franchise agreement with Paramount Franchising LLC, providing tax preparation, accounting, and related services from physical office locations in defined exclusive territories. See Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 12, pp. 27-29; Item 16, p. 34.***

**Response:** The defendant has no knowledge of the truth of this statement but admits that this statement is contained in plaintiff's Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 1, pages 27-29.

***8. As of 2025, Paramount operated 93 franchise and affiliated locations across the United States. See Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 20, pp. 44.***

**Response**: The defendant has no knowledge of the truth of this statement but admits that this statement is contained in plaintiff's Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 20, page 44.

***9. Plaintiffs have a franchisee operating a Paramount Tax & Accounting office at 11175 Cicero Drive, Suite 200, Alpharetta, Georgia 30004. See Ex. 22, Printout of "Locations" page from Plaintiffs' Website at PARAMOUNT.TAX, p. 4.***

**Response:** Admitted.

***10. Plaintiffs' Alpharetta, Georgia office is in the same northern metro Atlanta geographic area where Defendant operates. See Ex. 9, Printout of Defendant's Home Page at PARAMOUNTTAX.COM, p. 3.***

**Response:** Admitted.

***11. Defendant has acknowledged that Plaintiffs' Georgia franchise is located "minutes away" from Defendant's offices. See Ex. 12, Defendant's Supplemental Production Dated March 12, 2026, at p. 9.***

**Response**: Admitted.

***12. Defendant organized Paramount Tax and Accounting, LLC under the laws of Georgia on October 28, 2008. See Ex. 6, Certificate of Organization for Paramount Tax and Accounting, LLC, p. 1.***

**Response: Admitted.**
***13. Defendant registered the domain paramounttax.com on November 7, 2008. See Ex. 7, WHOIS Domain Record for paramounttax.com, at 458.***

**Response:** Admitted.

***14. Defendant has operated under the PARAMOUNT name using the @paramounttax.com email domain for client communications. See Ex. 16, Excerpt from Rule 30(b)(6) Deposition of Defendant's Corporate Representative Christopher Hardy on November 14, 2025, at 99:4-99:11.***

**Response:** Admitted.

***15. Defendant has asserted no license, franchise agreement, or other authorization from Plaintiffs to use the PARAMOUNT mark in this action. See Ex. 23, Declaration of Kenneth Thomas Emanuelson, ¶ 25.***

**Response:** Denied. The defendant has produced a "Memorandum of Understanding" drafted by or on behalf of the plaintiffs, in which they affirmatively reference and acknowledge the defendant's common law rights with

respect to asserted Paramount Mark in the State of Georgia. See defendant's Exhibit 19 and Declaration of William R. Carlisle, at paragraph 21.

***16. Defendant's corporate witness admitted under oath that the word "Paramount" in Defendant's business name is identical to the word "Paramount" in Plaintiffs' marks. See Ex. 10, Excerpt from 30(b)(6) Depo. at 187:13-187:20.***

**Response**: The defendant admits that the word "Paramount" is identical to the word "Paramount."

***17. Defendant's corporate witness admitted that Defendant offers the same type of services as Plaintiffs' franchise offices. See Ex. 11, Excerpt from Rule 30(b)(6) Deposition of Defendant's Corporate Representative Christopher Hardy on November 14, 2025, at 188:17-188:19.***

**Response**: The defendant's testimony speaks for itself.

***18. Defendant has operated under the PARAMOUNT name with actual knowledge of Plaintiffs' operations and trademarks since at least 2021. See Ex. 13, Excerpt from Rule 30(b)(6) Deposition of Defendant's Corporate Representative Christopher Hardy on November 14, 2025, at 134:13-134:17.***

**Response:** Admitted.

***19. Defendant did not conduct a trademark search before adopting the PARAMOUNT name for his tax and accounting business. See Ex. 14, Excerpt from Rule 30(b)(6) Deposition of Defendant's Corporate Representative Christopher Hardy on November 14, 2025, at 150:3-150:7.***

**Response:** Denied. During his deposition, Chris Hardy testified by responding "*No*" when asked if he recalled whether he had "*an attorney or trademark lawyer do a trademark search back then* (in 2008)."

***20. On November 16, 2025, Defendant forwarded a complete federal tax return package transmitted to his @paramounttax.com address, describing the***

***confusion in real time: a franchisee had emailed returns "getting the email address incorrect (@paramounttax.com vs @paramount.tax)". See Ex. 17, Communications Arising Out of Confusion Between the Parties, p. 907.***

**Response:** Admitted.

***21. Between 2022 and 2025, multiple third parties directed communications intended for Plaintiffs to Defendant, including individual tax clients, financial professionals, a mortgage lender, a wealth management firm president, an investment advisor, and the South Carolina Department of Employment and Workforce. See Ex. 17, Communications Arising Out of Confusion Between the Parties, p. 867-910; Ex. 12, Defendant's Supplemental Production Dated March 12, 2026, p. 10.***

**Response:** Admitted.

***22. Timothy Streid, President of Macro Wealth Management, directed a K-1 tax inquiry to Defendant's @paramounttax.com address to "Hi Paul," noting the question "may be for David." See Ex. 17, Communications Arising Out of Confusion Between the Parties, p. 869-870.***

**Response:** Admitted.

***23. At least one business professional's service inquiry went unanswered because her communication reached Defendant instead of Plaintiffs. See Ex. 17, Communications Arising Out of Confusion Between the Parties, p. 867.***

**Response:** The defendant denies this statement in the absence of any evidence from a person with direct personal knowledge, establishing that the inquiry went unanswered.

***24. A business owner simultaneously copied both parties' domains in a single email because she confused the two entities. See Ex. 17, Communications Arising Out of Confusion Between the Parties, p. 906.***

**Response:** The defendant admits that the document was sent to the plaintiffs but objects to, and denies the plaintiffs' conclusions regarding the confusion

experienced by a third party business owner, in the absence of some additional proof or statement by that individual.

***25. Clients and third-party contacts have directed documents and inquiries to Defendant's domain while intending to reach Paramount's Draper, Utah location. See Ex. 21, Declaration of David Southwick ¶¶ 4-6.***

**Response:** Admitted.

***26. Gina Weller, an Enrolled Agent with an established tax practice, declined an opportunity to enter the Paramount franchise system after identifying Defendant's use of the identical PARAMOUNT name in overlapping territory as an unresolvable obstacle. See Ex. 19, Declaration of Steven M. Rowley ¶¶ 3-5.***

**Response:** The defendant objects to and denies this hearsay statement regarding the declination by Weller, and the reasons why she allegedly declined to enter a franchise agreement, in the absence of reliable and trustworthy evidence.

***27. Paramount has operated a funded, coordinated national and regional advertising system since 2018, through franchisee marketing fees allocated to brand advertising. See Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 11, p. 18.***

**Response**: The defendant has no knowledge of the truth of this statement but admits that this statement is contained in plaintiff's Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 11, page 18.

***28. Paramount's franchise system grew from 39 outlets at the start of 2022 to 93 outlets at the end of 2024. See Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 20, p. 44.***

**Response**: The defendant has no knowledge of the truth of this statement but admits that this statement is contained in plaintiff's Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 20, page 44.

***29. Plaintiffs' Paramount Mark has achieved recognition sufficient to cause third parties to seek out Paramount's services by domain name. See Ex. 17, Communications Arising Out of Confusion Between the Parties, pp. 867-910.***

**Response**: This statement is denied as an unsound and invalid conclusion reached by the plaintiff's attorney that is unsupported by any document or testimony, aside from this self-serving statement.

***30. Plaintiff and Defendant use email domains incorporating the PARAMOUNT name that differ only in their top-level extension: Defendant uses @paramounttax.com; Plaintiffs use @paramount.tax. See Ex. 16, Excerpt from Rule 30(b)(6) Deposition of Defendant's Corporate Representative Christopher Hardy on November 14, 2025, at 99:4-99:11; Ex. 17, Communications Arising Out of Confusion Between the Parties, pp. 867-910.***

**Response**: Admitted.

***31. Plaintiff and Defendant offer services of the identical type. Both parties operate in the retail tax and accounting market, serving individual taxpayers, business owners, and financial professionals through physical office locations and email-based client communication. See Ex. 8, Printout of Plaintiffs' Home Page at PARAMOUNT.TAX, pp. 1; Ex. 9, Printout of Defendant's Home Page at PARAMOUNTTAX.COM, pp. 1-4.***

**Response**: Admitted.

***32. Defendant operates at 2100 Westshore Drive, Suite 204, Cumming, Georgia 30041. See Ex. 9, Printout of Defendant's Home Page at PARAMOUNTTAX.COM, p. 3.***

**Response:** Admitted.

***33. Defendant has acknowledged geographic overlap with Plaintiffs' franchise territory, and that the parties' locations are "minutes away" from one another. See Ex. 12, Defendant's Supplemental Production Dated March 12, 2026, p. 9.***

**Response:** The defendant admits that the plaintiff knowingly and intentionally sold a franchise in Johns Creek, GA, within the geographic area covered by the defendant, after this lawsuit was filed.

***34. Both parties use email domains incorporating the PARAMOUNT name as a primary client contact channel. See Ex. 16, Excerpt from Rule 30(b)(6) Deposition of Defendant's Corporate Representative Christopher Hardy on November 14, 2025, at 99:4-99:11; Ex. 17, Communications Arising Out of Confusion Between the Parties, pp. 867-910.***

**Response**: The defendant admits only that "*(b)oth parties use email domains incorporating the PARAMOUNT name*."

***35. Plaintiffs advertise through a coordinated national and regional system funded through franchisee marketing fees, as well as through the paramount.tax website, digital marketing, and franchisee-level direct marketing. See Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 6, pp. 6, 9 and Item 11, p. 18.***

**Response**: The defendant has no knowledge of the truth of this statement but admits that this statement is contained in plaintiff's Ex. 3, Excerpt from Franchise Disclosure Document for Paramount Franchising LLC, Item 6, page 6, 9 and Item 11, page 18.

***36. Additionally, prior to this litigation, Defendant personally acknowledged to Plaintiffs' representatives that Defendant had received emails intended for Plaintiffs' organization and was aware of the resulting marketplace confusion. See Ex. 19, Declaration of Steven M. Rowley, ¶ 2.***

**Response**: Admitted.

***37. In a deposition, Defendant's corporate witness admitted he personally redirected "a couple dozen" callers over an indefinite period who contacted his operation intending to reach Plaintiffs. See Ex. 15, Excerpt from Rule 30(b)(6) Deposition of Defendant's Corporate Representative Christopher Hardy on November 14, 2025, at 207:3-207:6.***

**Response**: Admitted.

***38. Emails misdirected to Defendant have included emails from individual tax clients transmitting sensitive tax documents containing personally-identifiable information. See Ex. 17, Communications Arising Out of Confusion Between the Parties, pp. 867-910.***

**Response:** The defendant admits that "*(e)mails misdirected to Defendant have included emails from individual tax clients.*" The defendant objects to the argumentative and unsupported description of the documents as "sensitive."

***39. Emails misdirected to Defendant have included emails from third-party financial professionals including a wealth management advisor and a mortgage lender. See Ex. 17, Communications Arising Out of Confusion Between the Parties, pp. 872, 877.***

**Response:** Admitted.

***40. Emails misdirected to Defendant have included emails from an investment advisor misdirecting sensitive communications. See Ex. 17, Communications Arising Out of Confusion Between the Parties, p. 869. 9 Case 1:24-cv-01014-MHC Document 51 Filed 05/28/26 Page 10 of 13***

**Response:** The defendant admits that "*(e)mails misdirected to Defendant have included emails from an investment advisor.*" The defendant objects to the argumentative and unsupported description of the communications as "sensitive."

***41. Emails misdirected to Defendant have included emails from a government agency misdirecting sensitive communications. See Ex. 17, Communications Arising Out of Confusion Between the Parties, pp. 877-878.***

**Response:** Admitted that the defendant received "*Emails misdirected to Defendant have included emails from a government agency*." The defendant objects to the argumentative and unsupported description of the communications as "sensitive."

***42. Defendant itself has documented and confirmed in writing at least 16 incidents of actual confusion between the parties. See Ex. 12, Defendant's Supplemental Production Dated March 12, 2026, p. 10.***

**Response:** The defendant admits that he compiled and sent the documents in Defendant's Supplemental Production Dated March 12, 2026 to the plaintiffs' attorneys.

***43. Defendant's corporate representative expressly acknowledged the incidents of actual confusion in his own words. See Ex. 15, Excerpt from Rule 30(b)(6) Deposition of Defendant's Corporate Representative Christopher Hardy on November 14, 2025, at 207:3-207:6.***

**Response**: The defendant admits only that his deposition testimony was properly recorded and transcribed, and speaks for itself.

***44. On October 17, 2025, Plaintiffs served their Interrogatory No. 19 on Defendant, asking for the following information: "If Defendant contends it has not infringed Plaintiff's rights in or to any of the Asserted Marks, please identify each such mark and state with particularity all legal and factual bases supporting such contention." See Ex. 18, Plaintiffs' Second Set of Interrogatories (13-24) to Defendant, p. 11.***

**Response:** Admitted.

***45. Defendant's response, which was provided only after being instructed by the Court to respond, failed to address any of the factors courts use to analyze***

***likelihood of confusion. See Ex. 12, Defendant's Supplemental Production Dated March 12, 2026, pp. 4-9.***

**Response:** This statement regarding the defendant's response to a discovery request is argumentative and a statement of legal opinion.

## III.
## ARGUMENT & CITATION TO AUTHORITY

### A.
### Plaintiff's Burden of Proof on Motion for Summary Judgment

#### 1.
#### Generally

*"At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact."* See Shenzhen Kinwong Elec. Co. v. Kukreja, 574 F.Supp.3d 1191 (S.D. Fla. 2021), 1209. "*In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party. In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial.*" See id., at 1209.

#### 2.
#### Summary Judgment Standard Applicable to Affirmative Defense of "Prior Use" and Common Law Rights Under OCGA § 10-1-452

As a defense against the plaintiffs' claims, the defendant alleged and argued its "prior use" and common law rights in the marks forming the basis of this action,

under OCGA § 10-1-452.[1] Under federal law, *"(c)ommon-law trademark rights are appropriated only through actual prior use in commerce."* See Spiral Direct, Inc. v. Basic Sports Apparel, Inc., 293 F.Supp.3d 1334 (M.D. Fla. 2017), 1368. The defendant asserted its common law rights and "prior use" of marks as an affirmative defense to the plaintiffs' claims. In reviewing a plaintiff's motion for summary judgment, "*(a) district court should not grant summary judgment where genuine issues of material fact exist about an affirmative defense.*" See Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008), 1380.

**3.**
**Defense of Prior Use Under 15 USC 1115(b)(5)**

The defendant in this action has raised the defense of prior use under 15 USC § 1115(b)(6). This statute provides that the plaintiffs' registered marks are subject to a defense that, "*the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this Act if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: Provided, however, That this defense or defect shall*

[1] *See OCGA § 10-1-452, "Nothing in this part shall adversely affect the rights or the enforcement of rights in trademarks or service marks acquired in good faith at any time at common law."*

*apply only for the area in which such continuous prior use is proved[.]"* To obtain summary judgment, the plaintiffs must disprove an essential element of this defense. To do this, the plaintiffs must show that there is no material fact remaining in dispute concerning the defendant's prior use of the asserted marks, the commercial nature of the use, or the continuous nature of the defendant's use, such that a jury could not reasonably find in favor of the defendant on at least one of those issues.

### B.
### Undisputed Facts Supporting Defendant's Common Law Rights and "Prior Use" of Marks

#### 1.
#### Defendant's Formation and Ongoing Compliance with Corporate Formalities

The defendant in this action, Paramount Tax and Accounting, LLC (PTA-GA), was organized by the filing of its Articles of Organization with the Secretary of the State of Georgia on 10/28/2008.[2] As shown from publicly available filings with the Secretary of State, PTA-GA has continuously remained in compliance with its statutory obligation to file annual registrations with the Corporate Division of the Georgia Secretary of State's office for each year since its formation in 2008.[3] This document was previously provided to the plaintiffs and is included in the record in multiple filings. As further shown from its filings with the

---

[2] See Defendant's Exhibit 1.

[3] See Defendant's Exhibit 2, Annual Registration Filings-Screenshot of GA-SOS.

Secretary of State, PTA-GA has continuously maintained a principal place of business, registered agent, and registered office since its formation on 10/28/2008.

**Defendant's Registration of URL and Publication of Website**

As shown from the ICANN and "WHOIS" registry, provided to the plaintiffs in defendant's 03/12/2026 document production as Bates No. 458-459, the defendant registered its "url," at "paramounttax.com" on 11/07/2008.[4] The defendant has maintained its registration and ownership of the url continuously since 11/07/2008. The defendant's registration currently extends through 11/07/2026. Moreover, pages from the defendant's website at www.paramounttax.com have been "crawled" and saved in The Internet Archive[5] , a publicly available resource also accessible on the public website known as "The Wayback Machine."As shown on the site, pages from the url at paramounttax.com have been captured 254 times dating back to 02/04/2011.[6] Additionally, as shown by Defendant's Exhibit 4, 603 unique paramounttax.com published page extensions have been saved in the archives. Further, the defendant provided plaintiff with multiple promotional documents, including a full color, tri-fold brochure (*03/12/2026 document production-Bates No. 858-859*), that was created

[4] See Defendant's Exhibit 3-ICANN Registration.
[5] *See State Nat'l Ins. Co. v. Highland Holdings, Inc., CASE NO. 8:14-cv-00524-EAK-EAJ (M.D. Fla. Jun 01, 2015), 3, "Internet Archive preserves Internet website publications at a specific date and time through a service identified as the Wayback Machine. Id. at 6. The Wayback Machine compiles archived data using software programs known as crawlers, which surf the Web and automatically store copies of web files, preserving these files as they exist at the point of time of capture. The Wayback Machine keeps track of the specific date and time that the website publication was captured and records the date and time in a uniform resource locater (URL)."*
[6] See page at" https://web.archive.org/web/20260000000000*/paramounttax.com.

as part of a targeted direct mailing campaign and directs inquiries to the website at partamounttax.com and the email address at info@paramounttax.com.[7]

### 3.
### Prior Use & Business Activity Shown in Court Filings

The defendant in this action was previously named as a defendant in a 2009 civil action filed as H&R Block Eastern Enterprises, Inc. v. Mary Squire and Paramount Tax and Accounting, LLC, Hall County Superior Court Civil Action File No.: 2009CV000099 ("*the H&R Block lawsuit*"). During the H&R Block lawsuit, the Hall County Superior Court entered an order adjudging PTA-GA to be in contempt for violating an injunction entered on January 21, 2009, prohibiting the defendant from soliciting or performing services for H&R Block customers.[8] In the Court's Order, entered 04/02/2009, PTA-GA was found to have violated the injunction by "*providing tax preparation services after January 21, 2009 to one hundred and twenty six customers[.]*" The injunction was later reversed by the Georgia Court of Appeals.

### 4.
### Additional Documents Showing Defendant's "Prior Use" of Marks

#### a.
#### Direct Mail Promotional Materials from 2008-2009

In addition to the information and documents described above, the defendant previously provided numerous additional documents to the plaintiff supporting

[7] See Exhibit 5-2009 Tri-fold Brochure.
[8] See Exhibit 6-Hall County Contempt Order.

PTA-GA's defense of "prior use" in its 03/12/2026 response to plaintiff's discovery requests. The "prior use" documents produced on 03/12/2026 were found by in a trove of documents from 2009, that were previously produced to attorneys for H&R Block in the above referenced Hall County lawsuit. These documents include emails dated 12/10/2008 through 12/29/2008, showing the defendant's order and purchase of "LACERTE" GA tax and accounting software from Intuit, for business use by its employees as Bates 467-472.[9] The defendant produced an 01/16/2009 email from Dunhill International List Co., Inc. at Bates 477, responding to the defendant's interest in purchasing a targeted mailing list for a direct mailing campaign.[10] A letter used in a direct mailing campaign, dated 01/06/2009, beginning with the greeting "Dear Taxpayer," and offering tax and accounting services, was also produced as Bates 481-483.[11] A template of another marketing letter, dated 12/22/2008, offering tax preparation services was provided as Bates 484.[12] A promotional coupon for $20.00 off tax preparation services that expires April 15, 2009 was provided at Bates 486.[13] A pre-sorted direct mailing piece to be delivered by the USPS as a "rider," dated 02/15/2012, was produced at Bates 461.[14]

---

[9] See Defendant's Exhibit 8-Lacerte Software Purchase Emails.
[10] See Defendant's Exhibit 9-Vendor Letter- Re: Direct Mailing.
[11] See Defendant's Exhibit 10-Promotional Direct Mail Offer Letter.
[12] See Defendant's Exhibit 11-Template for Direct Mailings.
[13] See Defendant's Exhibit 12-promotional coupons template for direct mail advertising.
[14] See Defendant's Exhibit 16-2008 Business Summary.

b.

The defendant's 03/12/2026 production also included documents showing the set up of its business operations, beginning in 2008. The defendant's production to the plaintiff included letters from the IRS informing PTA-GA of acceptance as an "*IRS e-filer*," dated 12/28/2008, as Bates numbers 474-476.[15] Letters accepting the employment application of tax preparers hired by the defendant in late 2008, as Bates numbers 500-525.[16] An email showing phone line extensions and email addresses purchased for use by the defendant's employees as Bates 797-799. An email dated 09/16/2008, provided as Bates number 830, summarizing a new business meeting with tax preparers interested in working for the defendant, and including discussion about picking a name and organizing the business entity that became Paramount Tax and Accounting, LLC.[17] A Business Summary created by the defendant in 2008 as Bates numbers 860-865.

## 5.
## Plaintiff's Memorandum of Understanding as an Extrajudicial Admission to Defendant's Prior Use

a.

As discussed in the defendant's previously filed motion to dismiss the plaintiffs' claims in this action, the defendant was contacted by plaintiffs' representatives before the filing of this suit to discuss the purchase of the

[15] See Defendant's Exhibit 13-IRS E-filer Acceptance Letters.
[16] See Defendant's Exhibit 14-Employment Notice Letters.
[17] See Defendant's Exhibit 15-Chris Hardy New Business Letter to Employees.

defendant's rights in the State of Georgia. Following months of negotiations between the parties, the plaintiff's offer was reduced to writing in a "*memorandum of understanding*" ("MOU"). The MOU outlined the terms and conditions applicable to the plaintiff's proposed purchase of "*all outstanding membership interests and outstanding stock for PGA, with a special consideration for the local 'Paramount Tax and Accounting' trademark and domain (collectively 'Trademark') owned and in use by PGA.*"[18]

b.

The MOU drafted by the plaintiff fails to include any language identifying the offer as a proposed settlement of any disputed claim between the parties. The preamble of the MOU states only that "*(t)his Term Sheet sets forth the proposed terms and conditions for the acquisition and merger of Paramount Tax and Accounting, LLC, a Georgia Limited Liability Company, and Paramount Investment Advisors, Inc. a Georgia Corporation (collectively "PGA") by Paramount Tax & Accounting CPAs, PLLC, a Nevada Professional Limited Liability Company ("PMT"). Upon acceptance of these terms and conditions, appropriate sale and purchase agreements will be drafted, and a closing will be scheduled.*" As shown from the language included under Section 9 of the MOU, the parties' negotiations were conducted at arms length. The MOU reads as a

[18] See Defendant's Exhibit 19-Memorandum of Understanding from Plaintiff.

purchase offer and not as a demand for settlement of a disputed claim, stating that, "*(a)t any time prior to the execution of a binding definitive agreement, either party may, at any time, propose terms that are different than those discussed in this Term Sheet or unilaterally terminate all further discussions and negotiations regarding the transactions contemplated herein without any liability whatsoever.*" After months of negotiations, in which the defendant's representative, Chris Hardy, was flown to Utah by the plaintiffs to become acquainted with their business operations, the negotiations ended without a purchase agreement on 08/04/2023.

Further, during his 30(b)(6) deposition on 11/14/2025, Hardy was questioned regarding his interaction with the plaintiff representatives, which went as follows:

**Q** "*So the first you ever heard or learned of my clients was when either Mr. Wilhelm or Mr. Rowley contacted you by phone or email, something like that?"*
**A** *"I believe it was phone, I believe it was phone, the first time.*

**Q** *"Okay, I assume you didn't get a cease and desist letter or something?*
**A** *"I did not."*

**Q** *"At no time have you ever gotten a cease and desist letter from my clients?"*
**A** *"I don't believe so. I do not ever recall receiving a cease and desist."*[19]

As shown from the MOU and the parties' interactions, the parties' initial communications involved the plaintiff's acknowledgment and recognition of the defendant as the senior user of the Paramount name in the State of Georgia.

**6.**

[19] See Deposition at Doc. 52-1, p. 133, line 25 to p. 134, line 12.

**The Testimony of Chris Hardy and the Defendant Support The Defendant's Affirmative Defense of "Prior Use"**

a.

During the individual and 30(b)(6) depositions taken by the plaintiff, Chris Hardy testified under oath, providing sworn answers to direct questions posed by the plaintiffs' attorney. Hardy was questioned extensively by the plaintiffs' attorney regarding his ongoing and continuous operation of PTA-GA across multiple office locations from the defendant's inception in 2008 through the present.[20] Specific topics involving the "commercial use" of the Paramount mark prior to 2015 include aspects of the business operations that became the subject of the lawsuit with H&R Block in 2009, as discussed above.[21]

b.

Hardy was also asked about his use of software as part of the defendant's marketing efforts. Hardy testified regarding his use of "Active Campaign" software to market the defendant's business, stating that, "*I've used it in the past to send out emails 17 or blast email.*"[22] When asked about the email service used by PTA-GA, Hardy replied that he had been using Microsoft first, and then Google, since the "*(e)arly 20-teens, so 2012, 2013, 2014, sometime along in there converted from Microsoft Office over to Gmail.*"[23] When asked about "*the date, month, day and*

[20] See Deposition, Doc. 49-2, pages 63-76.
[21] See Deposition, Doc. 52-1, pages 11-19.
[22] See Deposition, Doc. 52-1, page 80, line 11 to line 17.
[23] See Deposition, Doc. 52-1, page 90, line 11 to line 17.

*year, on which Defendant first used each of the challenged marks[,]*" Hardy responded that it was at "*the end of '08[,]*" and added, "*I believe it was 15 beginning mid-October, whenever the Secretary of State filing was going in and I know we had to get stuff to production for the handouts, and then also getting into the local, I think it was the Chamber of Commerce had a newspaper that goes out once a month. And we paid to be the member or the spotlight of the month, paid extra money for that. And it had the logo on there. I don't know if that printed in December or January or February. But it was sometime along that time period when I first got started.*"[24]

c.

In their motions for summary judgment, the plaintiffs' approach is to ignore and seek to minimize evidence of the defendant's prior commercial use of the paramount name and URL. Many of the exhibits attached with the plaintiffs' motions are the same documents referenced and included as exhibits to this response. The plaintiffs seek to obscure and minimize the content and relevance of documents through incomplete and generalized characterizations in their Statement of Material Facts and in the Declaration of Ken Emanuelson. See Declaration at Doc. 47-24, paragraphs 28-36, and SOMF, at Doc. 48, paragraphs 46-54.

[24] See Deposition, Doc. 52-1, page 152, line 23 to p. 153, line 6.

d.

As shown from the documents and deposition excerpts referenced in the Declaration of William R. Carlisle, the defendant has operated openly and continuously under the name Paramount Tax and Accounting, LLC, with its operations promoted through the website at URL: paramounttax.com, since its formation on 10/28/2008.[25] The declaration attached with this response points to documents and deposition testimony from the defendant showing the defendant's adoption and its prior, continuous, and ongoing commercial use of the Paramount name and URL at paramounttax.com since no later than 10/28/2008.

## C.
## Defendant's Common Law Rights Provide a Defense Against Plaintiff's Claims of Trademark Infringement and "Actual Confusion"

### 1.
### Test Applicable to Prior Use Defense

*"Courts in the Eleventh Circuit apply a two-part test to determine whether a party has demonstrated use of a mark sufficient to establish common law ownership (citation omitted). There must be evidence of (1) adoption of the mark and (2) 'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.*" See Irwin Holdings, LLC v. Weigh to Wellness, LLC, Case No.: 2:18-cv-00774-SGC (N.D. Ala. Aug 15, 2019), 18. As shown above and herein,

[25] See Declaration of William R. Carlisle, attached as Exhibit 22.

the defendant has cited evidence supporting its affirmative defense of common law rights by showing its prior and continuous use of the Paramount name and paramounttax.com URL from 2008 to the present. Almost every document attached as an exhibit to this response was either an exhibit to the plaintiffs' motions for summary judgment or was previously produced through discovery, but were either ignored or disregarded by the plaintiffs.

**2.**
**Adoption of the Mark**

The defendant initially "adopted" the name Paramount Tax and Accounting, LLC on 10/28/2008, by filing its Articles of Organization with the Georgia Secretary of State, and subsequently, on 11/07/2008,[26] by registering its url at www.paramounttax.com.[27] Additionally, the defendant applied for and obtained IRS e-filer status under the name Paramount Tax and Accounting, LLC on 12/28/2008.[28] Further, the defendant hired the first tax preparers for PTA-GA beginning in late 2008[29] to early 2009 and began providing tax preparation services in January of 2009.[30]

---

[26] See Defendant's Exhibit 1.
[27] See Defendant's Exhibit 2.
[28] See Defendant's Exhibit 13.
[29] See Defendant's Exhibit 14.
[30] See Defendant's Exhibit 6 and 7.

### 3.
### Defendant's Prior Use of the Mark

a.

In addition to evidence of "adoption" or "appropriation," the defendant has also provided substantial evidence of prior commercial use of the "Paramount" name. "*Ownership of a mark requires a combination of both appropriation and use in trade. Thus, neither conception of the mark nor advertising alone establishes trademark rights at common law. Rather, ownership of a trademark accrues when goods bearing the mark are placed on the market."* See Spiral Direct, Inc. v. Basic Sports Apparel, Inc., 293 F.Supp.3d 1334 (M.D. Fla. 2017), 1367. According to the deposition testimony of Chris Hardy, the name "Paramount Tax and Accounting" was used in commerce within days or weeks after the defendant was organized on 10/28/2008.

b.

To establish prior use of a contested mark, "*evidence of sales is highly persuasive*." See Spiral Direct, Inc. v. Basic Sports Apparel, Inc., 293 F.Supp.3d 1334 (M.D. Fla. 2017), 1367. As shown from the above referenced contempt order, entered in the H&R Block lawsuit on 04/02/2009, the defendant prepared taxes for 126 customers between the dates of 01/26/2009 and 04/02/2009.[31] In addition to evidence of the defendant's significant early sales of tax preparation services in 2009, the defendant has presented evidence showing the publication of its website

[31] See Defendant's Exhibit 8.

offering tax and accounting services, which has been published continuously since 2008.[32] The defendant's ongoing publication of its website, from 2008 to now, is material proof of the defendant's commercial use of the Paramount name and url, prior to the trademark registrations in 2015, as "*a company prove[s] prior use of a mark sufficient to establish ownership when, among other things, 'the distribution' of the mark was 'widespread' because the mark was accessible to anyone with access to the Internet.*" See Spiral Direct, Inc. v. Basic Sports Apparel, Inc., 293 F.Supp.3d 1334 (M.D. Fla. 2017), 1367.

**4.**
**Geographic Scope of Defendant's Common Law Rights Based on Prior Use**

A.

"*Geographic considerations are also particularly relevant where a plaintiff holds only common-law trademark rights in a mark because it is well established that the scope of protection accorded [its] mark is coextensive only with the territory throughout which it is known and from which it has drawn its trade. Therefore, a [party] asserting common-law trademark rights ... against the owner of a registered mark, as here, bears the burden of establishing the right to use its mark by actual use in a given territory.*" See Spiral Direct, Inc. v. Basic Sports Apparel, Inc., 293 F.Supp.3d 1334 (M.D. Fla. 2017), 1368. The defendant has also produced a redacted list of clients served by PTA-GA. The documents include

[32] See Defendant's Exhibits 3 and 4.

street addresses, city, state and zip code information, revealing the scope of the geographic area served by PTA-GA.[33] The redacted client list shows that PTA-GA has served thousands of clients located in 25 of the 159 counties in the State of GA.[34]

**CONCLUSION:**

The plaintiff has failed to meet its burden as a movant for summary judgment. The defendant has produced substantial evidence of its adoption and continuous commercial use of the Paramount name and URL in the State of Georgia beginning in 2008, starting seven (7) years prior to the trademark registrations asserted by the plaintiff. The argument that there is no triable issue regarding the defendant's common law rights and prior use has been carefully and disingenuously curated by the plaintiff, and relies on their exclusion of material information found in documents and deposition testimony that refute their claim.

To obtain summary judgment, the plaintiffs must show that there is no triable issue regarding the issue of defendant's prior use. See PayCargo, LLC v. CargoSprint LLC, CASE NO. 1:19-CV-22995-LOUIS (S.D. Fla. Jun 17, 2021), 12, "*As the party seeking summary judgment on a factual issue with respect to which it bears the burden of proof, Plaintiff must present evidence on each element so decisive that no reasonable fact finder could find for Defendants.*"See also Pacific

[33] See Defendant's Exhibits 17-Client Location Documents.
[34] See Defendant's Exhibits 18-GA County map with client locations.

Employers Ins. v. Wausau Business Ins., 508 F.Supp.2d 1167 (M.D. Fla. 2007), "*In light of Defendants' affirmative defenses, in order for Plaintiffs to obtain summary judgment they must either disprove the affirmative defenses raised by evidence or establish the legal insufficiency of the defenses.*" Instead of seeking to disprove the defendant's claim of prior use, the plaintiffs attempted to meet their high burden by selectively including facts or documents considered helpful to their false narrative, while ignoring substantial evidence of facts supporting the defendant's claim of common law rights and prior use.

**WHEREFORE**, the defendant requests that the plaintiff's Complaint be dismissed.

---

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing **Defendant's Response to Plaintiffs' Motion for Summary Judgment on the Issues of "Prior Use" & "Actual Confusion" and Exhibits in Support Thereof,** has been prepared in compliance with Local Rule 5.1(B) in Times New Roman, 14-point font.

---

Date: 06/13/2026

Respectfully submitted,
*/s/ William R. Carlisle*
William R. Carlisle
Attorney for Plaintiff
GA Bar No.: 110382

**CARLISLE LAW FIRM**
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com

## CERTIFICATE OF SERVICE

I certify that I have on this day electronically submitted the foregoing **Defendant's Response to Plaintiffs' Motion for Summary Judgment on the Issues of "Prior Use" & "Actual Confusion" and Exhibits in Support Thereof,** to the Clerk of Court using the Court's e-filing system, which will automatically send electronic mail notification of such filing to the following counsel of record:
***Ken Emanuelson, at: ken@emanuelson.us***
***Steven E. Ross, at: sross@maxuslegal.com***
***Zahra S. Karinshak, at: karinshak@khlawfirm.com.***

Date: 06/13/2026

Respectfully submitted,
*/s/ William R. Carlisle*
William R. Carlisle
Attorney for Plaintiff
GA Bar No.: 110382

**CARLISLE LAW FIRM**
4607 Cardinal Ridge Way
Flowery Branch, GA 30542
(770) 295-0175
wrclaw@gmail.com

**DEFENDANT'S LIST OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Articles of Organization for Paramount Tax and Accounting, LLC filed on 10/28/2008 |
| 2 | Annual Registration Filings-Screenshot of GA-SOS |
| 3 | ICANN/WHOIS Registry Information Page for www.paramounttax.com |
| 4 | The Internet Archive-URL Page Extensions & Dates |
| 5 | 2009 Tri-Fold Brochure |
| 6 | 2009 Hall Co. - H&R Block Contempt Order |
| 7 | Attorney Letter Re: Tax Preparation-126 Clients |
| 8 | Emails-Lacerte Software Purchase |
| 9 | Vendor Email Re: Targeted Mailing Lists |
| 10 | 2009 Promotional Direct Mail Offer Letter |
| 11 | Template for Direct Mailings |
| 12 | Presort Postcard Coupons for USPS delivery |
| 13 | IRS E-filer Notices |
| 14 | Employee Notice Letters |
| 15 | Chris Hardy New Business Letter to Employees |
| 16 | 2008 Business Summary |
| 17 | Redacted Client Lists Showing Locations |
| 18 | GA County Map-Client Locations |
| 19 | Memorandum of Understanding from Plaintiff |

| | |
|---|---|
| 20 | Phone and Email Assignments to Employees |
| 21 | Purchase of Computer Equipment |